UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS R. HOSTETLER,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>Defendant. | No. CV-06-310-MWL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on May 14, 2007. (Ct. Rec. 13, 15). Thomas Hostetler ("Plaintiff") filed a reply brief on May 10, 2007. (Ct. Rec. 17). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Joanne E. Dantonio represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 13).

**JURISDICTION**

On October 18, 2004, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") alleging disability since November 16, 2001, due to nerve damage in his right arm, hand and shoulder, and pain in his left arm, hand, and knee. (Administrative Record ("AR") 51-54, 65). The applications were denied initially and on reconsideration. Administrative Law

Judge ("ALJ") James A. Burke held a hearing on April 21, 2006. (AR 252). Plaintiff and vocational expert Tom Moreland testified. (AR 255-272). The ALJ issued a decision finding that plaintiff was not disabled on July 24, 2006. (AR 11-17). The Appeals Council denied a request for review on September 27, 2006. (AR 5-7). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on November 9, 2006. (Ct. Rec. 1, 4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both plaintiff and the Commissioner and will only be summarized here. Plaintiff was 43 years old on the date of the decision. (AR 51). He has a high school education and one year of college, and past work experience as a military security guard, animal technician, pizza delivery driver, cashier, and telemarketer. (AR 71, 66).

Plaintiff last worked as a dog groomer. He was fired after his right arm went numb causing him to accidentally injure the dog he was grooming. (AR 255-256). Plaintiff takes over the counter medication. (AR 257). He has pain in his left knee, hips and lower back. (AR 258-259). Plaintiff can sit for about two hours and stand for about 15 minutes. (AR 258-259). He has a stiff neck, headaches, and a "deadened sensation" in his right arm from his hand up to above the elbow. (AR 260-262). Plaintiff finds it difficult to get comfortable enough for sleep because of neck and shoulder pain, as well as occasional leg pain. (AR 263). He can carry 40 pounds about 20 feet. (AR 265). Plaintiff has six dogs, some cats, a bird, and a miniature horse. (AR 265-266).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous

work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if plaintiff is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520 (c), 416.920 (c).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing past work. If plaintiff is able to perform this previous work, plaintiff is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents engaging in a previous relevant occupation. The burden then shifts to the Commissioner to show (1) that plaintiff can perform other substantial gainful activity and

(2) that a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of an ALJ's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [ALJ's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the ALJ. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the ALJ is conclusive. *Sprague v. Bowen*, 812 F. 2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

As a preliminary matter, the ALJ noted that plaintiff earned sufficient quarters of coverage to remain insured for DIB purposes through December 31, 2006. (AR 11). At step one the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date, November 16, 2001. (AR 13). At steps two and three, the ALJ determined that plaintiff has the severe impairments of a depressive disorder, a history of carpal tunnel syndrome with distant release surgery in 1995, and a history of knee surgery with residual pain complaints, but he does not have an impairment or combination of impairments listed in or medically equal to one of the Listed impairments. (AR 13-14). The ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform a range of light work, with physical limitations for kneeling and crouching, and mild to moderate limitations with respect to concentrating and socially interacting. (AR 14).

At step four of the sequential evaluation process, the ALJ found that plaintiff could perform his past relevant work as a pizza delivery driver and as a telemarketer. (AR 15-16). After finding that plaintiff could perform his past relevant work, the ALJ was not required to proceed to step five. The ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. (AR 16).

**ISSUES**

Plaintiff contends that the ALJ erred as a matter of law. Specifically, plaintiff argues that:

1. The ALJ failed to properly weigh the medical evidence, and

2. The ALJ erred by failing to failing to include all of plaintiff's impairments, including mild to moderate impairment in the ability to concentrate and to interact socially, in his hypothetical to the vocational expert.

(Ct. Rec. 14 at 8-12)

This court must uphold the ALJ's determination that plaintiff was not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Weighing Medical Evidence**

Plaintiff argues that the ALJ failed to properly weigh the opinions of examining physicians Kristi Ketz, Ph.D., and Dennis R. Pollack, Ph. D (Ct. Rec. 14 at 8, 10-12); specifically, plaintiff contends that the ALJ erred by rejecting both physicians' assessed GAF of 50, and Dr. Pollack's opinion that plaintiff would have moderate and marked work related limitations, in favor of the opinion of consulting physician Sean Mee, Ph.D. (Ct. Rec. 14 at 11). The Commissioner responds that the ALJ properly resolved the conflicting medical evidence. (Ct. Rec. 16 at 7).

A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). To reject the opinion of a treating or examining physician the ALJ must have evidence to support the decision such as laboratory test results, contrary reports from other physicians of record, or testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.

The ALJ considered the February 21, 2005, assessment of examining physician Dr. Ketz. (AR 14, referring to AR 145-150). Dr. Ketz noted that plaintiff had no history of counseling, treatment with psychotropic medication, or any other mental health treatment [despite an onset date of November 16, 2001]. (AR 145). Plaintiff had depression off and on for the last 10 to 20 years, and felt exhausted for the last 10 years. (AR 145). He felt worthless and guilty because he and his spouse lost their house in 2001, and because he is not contributing financially. (AR 145). Plaintiff described difficulty with concentration, decision making, and racing thoughts his entire life. (AR 145-146). He seriously planned suicide in 1995 or 1996 but denied any current plan or intent. (AR 146). Plaintiff experiences nausea and abdominal stress which he thought might be stress related. (AR 146). He reported suffering from low thyroid, high cholesterol, high blood pressure, enlarged prostate, and chronic pain; his low thyroid was "going to be treated through the VA beginning this week." (AR 146). Plaintiff took lipitor, zantac, and two high blood pressure medications. (AR 146). He admitted that he takes his medications inconsistently, including

failing to take any medication the entire previous weekend. (AR 146). Plaintiff was fired from his last job as a dog groomer because "a dog collapsed when he was grooming him and there were too many groomers." (AR 146).

After she administered several tests, Dr. Ketz opined that plaintiff meets the criteria for major depressive disorder and dysthymia "due to the following reported symptoms: anhedonia, recent weight gain, sleep disturbance, fatigue, hopelessness, feelings of worthlessness/guilt, difficulty concentrating, and occasional suicidal ideation." (AR 149). Dr. Ketz's testing revealed plaintiff's memory skills are mostly in the high average range and his attention skills are average. (AR 149). She found no significant differences between plaintiff's immediate and delayed memory, nor between his visual and auditory memory. (AR 149). Dr. Ketz assessed major depressive disorder, recurrent, severe; dysthymia, and a GAF of 50.[1] (AR 149). Dr. Ketz noted that plaintiff's psychosocial and environmental problems included problems with his spouse, housing problems, including inadequate housing, no social support, and inadequate finances. (AR 149).[2] Dr. Ketz opined that plaintiff's mental health prognosis was good, and "he is already coping adequately with severe psychosocial stressors." (AR 150). She noted that although plaintiff might benefit from mental health treatment for his depressive symptoms, "he declined treatment with antidepressants per chart review." (AR 150)(apparently referring to AR 135, a VA chart note dated September 13, 2004, indicating plaintiff "refused medical treatment for depression").

Despite assessing a GAF of 50 and opining that external stressors could decrease concentration and memory, Dr. Ketz opined that memory, reasoning, and concentration appeared adequate for work situations, and nothing in her evaluation suggested psychological reasons that plaintiff would be unable to work in a competitive setting. (AR 150). Dr. Ketz found no evidence

---

[1] A Global Assessment of Functioning Scale (GAF) of 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. , no friends, unable to keep a job). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed., (DSM-IV), at 32.

[2] Axis IV is used to diagnose psychosocial and environmental problems. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4th Ed., (DSM-IV), at 30. Accordingly, Dr. Ketz lists these problems under her Axis IV diagnoses. (AR 149).

that plaintiff would have difficulty getting along with others in a work setting, and no evidence of difficulty adapting or remaining flexible. (AR 150).

The ALJ gave three specific reasons for discrediting some of Dr. Ketz's opinions: (1) plaintiff never sought or underwent mental health treatment. (AR 14). (2) Dr. Ketz's assessed GAF of 50 is contradicted by her opinion in the same evaluation that plaintiff's reasoning, memory, concentration, social interaction, and ability to adapt are adequate for competitive employment, with "the possible exception of some unspecified decrease in concentration which might result from stress." (AR 14). (3) Dr. Ketz's GAF is contradicted by her statement that "[t]here was nothing in this evaluation to suggest psychological reasons that Mr. Hostetler would be unable to work in a competitive work setting." (AR 14, citing Exhibit 3F/6, at AR 150).

The ALJ considered the opinion of Dennis R. Pollack, Ph.D., who examined plaintiff on March 31, 2006. (AR 14). Dr. Pollack reviewed plaintiff's medical records, including the results of a neurological examination by Steven Pugh, M.D., and Dr. Ketz's report. (AR 219). Dr. Pollack administered psychological testing and noted some symptom exaggeration. (AR 223). He opined that plaintiff's results "suggest that he has difficulty following social norms. He is likely to do what he prefers rather than to conform to the demands of society." (AR 223). Dr. Pollack observed that plaintiff's intelligence is in the superior range, he has a tendency to overstate his difficulties, and is preoccupied with physical complaints. (AR 224). Dr. Pollack's review of plaintiff's evaluations [for medical problems] showed, in many instances, only mild physical problems. (AR 224). Dr. Pollack opined that plaintiff "seeks medical solutions for his problems even though some of them are psychologically based " and "prefers physical explanations for his difficulties as that allows him to place responsibility for them as being outside his control." (AR 224). Dr. Pollack diagnosed somatization disorder, pain associated with both psychological factors and a general medical condition, and dysthymic disorder. (AR 224). He assessed a GAF of 50. (AR 225). In a form completed April 18, 2006, Dr. Pollack opined that plaintiff is markedly limited in two areas: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR

227).

The ALJ considered the report by consultative physician Dr. Sean Mee, Ph.D., dated June 1, 2006. (AR 15, referring to 234-246). Dr. Mee noted that plaintiff told Dr. Ketz his "depressed mood is not too bad now," and he described mild symptoms of depression for the past 10-20 years. (AR 246, referring to AR 145). Dr. Mee noted Dr. Ketz's observation that plaintiff appeared pleasant and cooperative. (AR 246, referring to AR 150). Dr. Mee pointed out Dr. Ketz's opinion that were no psychological reasons plaintiff would be unable to work in a competitive work setting. (AR 246, referring to AR 150).

Dr. Mee noted the opinion of examining physician Fred Price, D.O., on March 19, 2005, (AR 246, referring to AR 151-158) that plaintiff appears to have no real restrictions other than his knees and his memory; Dr. Mee observed that formal testing did not confirm memory problems. (AR 246, referring to AR 157). Dr. Mee noted that Dr. Price opined that it was unclear on examination why plaintiff "had not returned to working activities or tried to get a job at this point in his life." (AR 246, referring to AR 158). The ALJ additionally noted Dr. Price's opinion that plaintiff is capable of performing light work with very few restrictions, and medium work with additional restrictions. (AR 14, referring to AR 157).

Dr. Mee considered the findings following a neurological evaluation by Dr. Pugh on July 21, 2005. (AR 246). Dr. Pugh stated:

> EMG nerve conduction study performed on May 23, 2005, of the right upper extremity was completely normal with the exception of [a] very mild evidence of an ulnar mononeuropathy which would not explain the patient's symptoms. . . Intact recent memory with normal attention span and concentration. . . . His examination shows some embellishment. I did not get the impression there was full effort on the strength part of the examination. There is a discrepancy between the subjective findings and what I would consider objective findings in the form of reflex testing.

(AR 208-209).

Dr. Mee reviewed Dr. Pollack's March of 2006 report and his mental medical source statement dated April 18, 2006. (AR 246). Dr. Mee pointed out Dr. Pollack's observation that plaintiff arrived on time and was cooperative. (AR 246, referring to AR 219). Dr. Mee observed that plaintiff reported difficulty writing, grasping and manipulation with his hands, which is inconsistent with plaintiff's performance IQ ("PIQ"), measured by Dr. Pollack in the superior range and at the 95th percentile. (AR 246, referring to AR 222). Dr. Mee explained that

"[plaintiff] performs at the mean for digit symbol requiring adequate motor speed and fine motor ability. In addition there is no evidence of slowed visual/motor processing with claimant performing above average on timed tasks including block design at SS=15 [a scaled score of 15]." (AR 246). Dr. Mee observed that plaintiff's MMPI results are consistent with plaintiff's self-reporting physical complaints. (AR 246). Plaintiff described himself to Dr. Pollack as forgetful; Dr. Mee pointed out that this is inconsistent with the results of memory testing. (AR 246). As noted, Dr. Pollack assessed marked limitations in two areas.[3] Dr. Mee rejected this opinion because: (1) Dr. Pollack gave no supporting reasons for the assessed marked limitations; (2) Dr. Pollack's report does not support the assessment, and (3) the other medical evidence does not support assessing marked limitations. (AR 246, referring to AR 227).

Dr. Mee opined that plaintiff's allegations are not completely credible for several reasons: (1) plaintiff embellished his symptoms during Dr. Pugh's neurological examination; (2) plaintiff frequently reports problems with memory, concentration and fine motor ability, but these reports are "in significant conflict with actual objective findings of average to well above average on measures of attention/concentration from [the] Working memory index;" and testing reveals that memory function is in the superior range; (3) [despite complaints of right hand numbness/dropping things,] plaintiff's speed on motor tasks shows above average processing; and (4) a wide range of daily activities contradicts plaintiff's self-reported impairments. (AR 246). Dr. Mee concluded that plaintiff's impairments resulting from psychological disorders are non-severe. (AR 246).

The ALJ considered the records of treating surgeon Russell Oakley, M.D. (AR 15, referring to Exhibits 5F, 6F, and 11F). Dr. Oakley first performed arthroscopic surgery on plaintiff's knee in 1995. (AR 140). Plaintiff returned to Dr. Oakley on November 1, 2004, with an MRI showing a tear of the anterior horn of the medial meniscus and what appeared to be a chronic tear of the anterior cruciate ligament. (AR 161). Dr. Oakley recommended another arthroscopy to remove the torn fragment of cartilage from the anterior medial meniscus. (AR 161). He performed this surgery and opined a week later, on March 17, 2005:

[3] Dr. Pollack assessed marked limitations in plaintiff's ability to sustain an ordinary routine without special supervision, and in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 227).

> Now that the meniscus has been resected, I think he will have a marked improvement in his knee function.
> At this time, he needs to start thinking about how he is going to get back to work. . . . At this point he has no restrictions on his knee. I am sending him to a month of physical therapy. All in all I think it is going to be difficult getting him back to work as he has been off for so long [three and one half years] and he seems to be somewhat anxious about going back.

(AR 162). On April 28, 2005, Dr. Oakley opined that plaintiff was fixed and stable and doing quite well. (AR 163). After plaintiff complained on June 9, 2005, of numbness and tingling in his right arm, Dr. Oakley referred him for a neurological evaluation (AR164); as noted, Dr. Pugh opined that test results revealed no basis for this complaint. (AR 208-209).

The ALJ considered the opinion of agency physician Dr. Mee, plaintiff's credibility (though not explicitly), and the other medical evidence when he weighed the opinions of Drs. Ketz and Pollack. As indicated, the ALJ observed that plaintiff never sought or underwent any mental health treatment, before or after his examinations by Drs. Ketz and Pollack; this undercuts the reliability of both GAF assessments. (AR 14). The only evidence of mental impairment consists of the psychological evaluations by Drs. Ketz and Pollack. The ALJ found that Dr. Ketz's GAF was further significantly contradicted by her opinion that "[t]here was nothing in this evaluation to suggest psychological reasons that Mr. Hostetler would be unable to work in a competitive work setting." (AR 14, referring to AR 150).

In addition to the evidence pointed out by Dr. Mee in his record review, the ALJ relied on Dr. Price's observations following his examination on March 19, 2005. (AR 14, referring to AR 151-158). The ALJ noted:

"[I]t was indicated that the claimant was a well muscled and relatively flexible [man], and appears to be taking care of himself, his spouse, and numerous animals, with living in a trailer, and driving and hauling water. It was opined that he appeared to have no real restrictions other than his [reported] memory and knees."

(AR 14). The ALJ noted that Dr. Price assessed an RFC for light to medium work. (AR 14, referring to AR 157-158).

The ALJ did not explicitly weigh plaintiff's credibility. However, it is clear from the decision that the ALJ found plaintiff less than fully credible for several reasons, sufficiently set forth for review: (1) plaintiff claimed he was fired from his last job for reasons related to his

alleged impairments, but he did not seek less strenuous work or medical treatment for 3 years after he was fired. (AR 16). (2) From the date of onset to September of 2004, there is a three year absence of any medical treatment, mental or physical. (AR 15-16). (3) Following plaintiff's 2005 arthroscopy, he has not sought, required or undergone any treatment, either physical or mental. (AR 16). (4) Treating surgeon Dr. Oakley opined that plaintiff could return to work. (AR 15-16). (5) The two psychological evaluations by Drs. Ketz and Pollack are plaintiff's only mental health records. (AR 15). (6) Plaintiff's activities include taking care of himself, his spouse, and numerous animals, including six dogs and a miniature horse; he also drives and hauls water. (AR 14-15). (7) Plaintiff worked at the SGA level for nearly 20 years with self-described depression, and "there has been no evidence demonstrating the introduction of a 'severe' mental impairment since." (AR 16). (8) Plaintiff attributed his upper extremity complaints to a shoulder injury sustained while in the military, yet he was able to work at the substantial gainful activity level for many years after the injury. (AR 15). (9) Plaintiff reported dropping things, yet stated that he can lift a gallon of milk with his right hand, can carry up to 40 pounds with his left hand, and takes care of six dogs and a miniature horse. (AR 14-16).

The ALJ found plaintiff less than completely credible for a variety of legitimate reasons supported by substantial evidence. Plaintiff's activities, not all articulated by the ALJ, included rising daily at four a.m., driving his spouse to a gym to shower,[4] driving her to work, shopping nearly daily, cooking dinner, driving back to pick up his spouse at work, taking laundry to the laundromat while his spouse worked, buying and hauling water by the gallon, and caring for a large number of animals daily. (AR 90-92, 148, 153). Dr. Price indicated that plaintiff drove his manual transmission vehicle to the appointment on March 19, 2005. (AR 151). The range of plaintiff's daily activities is inconsistent with the severe degree of impairment alleged. The ALJ appropriately considered this inconsistency when he considered plaintiff's credibility.

The ALJ noted that several of plaintiff's statements are contradicted by the medical record. (AR 14). Dr. Price's observation that plaintiff appeared "well-muscled" is inconsistent with

[4] Dr. Price noted that plaintiff and his spouse lived in a trailer without hookups or water. (AR 153). Dr. Ketz indicated that a propane heater provides heat and a generator and batteries provide lights and television. (AR 148).

plaintiff's allegations of severe physical impairment. (AR 14, referring to AR 157). Treating Dr. Oakley and examining Drs. Ketz and Price opined that plaintiff is able to work. (AR 14, referring to AR 157). Similarly, plaintiff's complaints of numbness and tingling in his right arm were not confirmed by neurological testing. (AR 208-209). On February 25, 2005, plaintiff told the VA that psychologically, he had generally been feeling good lately, and he declined pain medication. (AR 191, 193).

With respect to Dr. Pollack's opinion, the ALJ agreed with Dr. Mee that the assessed "marked" limitations in two areas of functioning are not supported by the record. (AR 15, citing Exhibit 17F at 13). Dr. Mee pointed out that the later assessed marked limitations are unsupported by Dr. Pollack's own evaluation. (AR 246). A significant reason the ALJ relied on was plaintiff's complete absence of any mental health treatment despite access to and being offered such treatment at the VA. (AR 15). The ALJ relied on specific and legitimate reasons, including other medical opinions, supported by substantial evidence, when he rejected the marked limitations assessed by Dr. Pollack.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

The ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting Drs. Ketz and Pollack's assessed GAF of 50. Dr. Ketz opined that plaintiff had no psychological impairments to competitive employment. Dr. Pollack noted upon testing that plaintiff exaggerated his symptoms, as did Dr. Pugh. Dr. Pollack assessed two marked limitations which are not supported by any other medical evidence. Most significantly, plaintiff has never been treated for any mental impairment, undercutting the presence of a severe mental impairment. Similarly, plaintiff has not undergone any physical treatment following his knee arthroscopy in 2005, and he sought no treatment for knee or any other physical problems for three years after the onset date. This too is a legitimate reason relied by the ALJ in finding that plaintiff

is physically capable of performing his past relevant work as a pizza delivery driver or a telemarketer.

**B. Step Four Burden of Proof**

Plaintiff argues that the ALJ found plaintiff suffered from the psychological impairments of mild to moderate impairment in the ability to concentrate and to interact socially, but omitted these impairments in his hypothetical to the vocational expert. (Ct. Rec. 14 at 8, 12). The Commissioner responds that the ALJ had no duty to consult with a VE because plaintiff failed to meet his burden at step four of producing evidence that he could not perform his past relevant work. (Ct. Rec. 16 at 16-17).

The Commissioner is correct that the ALJ had no duty to consult a vocational expert at step four. *See e.g., Tackett v. Apfel*, 180 F. 3d 1094, 1098, 1100-1101 (9th Cir. 1999) ("Once a claimant has established that he or she suffers from a severe impairment that prevents the claimant from doing any work he or she has done in the past, the claimant has made a prima facie showing of disability. At this point - step five - the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy"). Plaintiff has the duty of producing evidence at steps one through four. The burden then shifts to the Commissioner at step five to determine whether there is other work in the national economy that plaintiff can perform, a determination which may be made with the assistance of a vocational expert..

In *Stout v. Commissioner of Social Security*, 454 F. 3d 1050, 1055 (9th Cir. 2006), the court reviewed prior cases presenting a similar issue:

> We have additionally found harmless errors that occurred during a procedure or step the ALJ was not required to perform. *See, e.g., Matthews v. Shalala*, 10 F. 3d 678, 681 (9th Cir. 1993) . . .
>
> In *Matthews*, we similarly held harmless the ALJ's failure, 'whether or not the ALJ erred' to include the claimant's 'staying in one position' limitation in his hypothetical to the VE. 10 F. 3d at 681. We did so after determining the VE's testimony was 'not required' because the claimant had failed to show he could not return to his past employment. . . . the ALJ's error, if any indeed existed, was inconsequential to the ultimate nondisability determination. *See Burch*, 400 F. 3d at 682 (concluding any error was nonprejudicial); *Matthews*, 10 F. 3d at 681 (concluding any error occurred during hypothetical ALJ was 'not required' to ask).

*Stout*, 454 F. 3d at 1055-1056.

Similarly, the ALJ's error, if any, in failing to include mild to moderate psychological impairments in the hypothetical is harmless because at step four plaintiff failed to establish that he was unable to return to his past relevant work, making the VE's testimony unnecessary.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision, that plaintiff was capable of performing his past relevant work as a pizza delivery driver or telemarketer is supported by substantial evidence and free of legal error. Plaintiff is thus not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 16**) is **DENIED**.

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 20**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

**DATED** this 1st day of June, 2007.

s/Michael W. Leavitt
MICHAEL W. LEAVITT
UNITED STATES MAGISTRATE JUDGE